IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Terry Lyn McCutcheon,<br><br>               Petitioner,<br><br>v.<br><br>State of Arizona et al.,<br><br>               Respondents. | No. CV-15-0512-PHX-PGR (ESW)<br><br>**REPORT AND RECOMMENDATION** |

**TO THE HONORABLE PAUL G. ROSENBLATT, UNITED STATES SENIOR DISTRICT JUDGE:**

      Pending before the Court is Terry Lyn McCutcheon's ("Petitioner") Amended Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus (the "Amended Petition") (Doc. 6). Respondents have filed their Answer (Doc. 14), to which Petitioner has replied (Doc. 20). The matter is deemed ripe for consideration.

      Petitioner raises one ground for habeas relief in the Amended Petition. The undersigned finds that the Amended Petition is time-barred under the one-year statute of limitations set forth in the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 110 Stat. 1214.[1] It is therefore recommended that the Amended Petition be dismissed with prejudice.

---

[1] The one-year statute of limitations for a state prisoner to file a federal habeas petition is codified at 28 U.S.C. § 2244(d).

## I. BACKGROUND

In December 1986, a jury found Petitioner guilty of one count of armed burglary, seven counts of armed robbery, and nine counts of kidnapping.[2] (Doc. 14-1 at 75, 100). Petitioner committed the offenses on May 1, 1984. (*Id*. at 78). At the January 14, 1987 sentencing hearing, the trial court determined that Plaintiff was on parole when he committed the offenses and was therefore subject to enhanced sentences under Arizona law. (*Id*. at 71). The trial court sentenced Petitioner to terms of life imprisonment on each of the seven armed robbery convictions and to lesser terms on the remaining ten counts. (*Id*. at 80-87, 113-14). All sentences run concurrently with each other. (*Id*. at 87).

On September 15, 1988, the Arizona Supreme Court affirmed Petitioner's convictions and sentences. (*Id*. at 10-13).

On November 16, 2011, Petitioner, through the Arizona Justice Project, filed a Notice of and Petition for Post-Conviction Relief ("PCR"). (*Id*. at 116-19, 121-46). The PCR Petition challenged Petitioner's enhanced sentences by arguing that Petitioner's parole had expired before he committed the May 1984 offenses. (*Id*. at 127-34). On March 13, 2012, the trial court dismissed the PCR Petition, finding that although certain claims were timely raised, they were without merit. (*Id*. at 148-50). On October 3, 2013, the Arizona Court of Appeals denied Petitioner's request for review. (*Id*. at 152-66, 168). Petitioner filed a Petition for Review in the Arizona Supreme Court, which was denied on April 22, 2014. (*Id*. at 170-78, 180).

On March 20, 2015, Petitioner initiated this federal habeas proceeding. (Doc. 1). On June 22, 2015, pursuant to the Court's Order (Doc. 5), Petitioner filed the Amended Petition (Doc. 6).

---

[2] These convictions followed a retrial ordered by the Arizona Supreme Court in its July 18, 1986 decision reversing Petitioner's convictions following a trial held in 1984. The Arizona Supreme Court ruled that the trial judge's comments and questions to the jury were so coercive that it was error for the trial judge not to declare a mistrial or grant a new trial. (Doc. 14-1 at 2-8).

## II.  LEGAL STANDARDS

Federal habeas petitions are subject to a one-year statute of limitations set forth in AEDPA.  The limitations period commences on the latest of one of the following four dates:

> A. The date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; [3]
>
> B. The date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the petitioner was prevented from filing by the State action;
>
> C. The date on which the right asserted was initially recognized by the United States Supreme Court, if that right was newly recognized by the Court and made retroactively applicable to cases on collateral review; or
>
> D. The date on which the factual predicate of the claim presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1); *see also Hammerle v. Schriro*, 495 F.3d 1069, 1073-74 (9th Cir. 2007).  For habeas petitions containing multiple claims, the appropriate triggering date of the limitations period is determined on a claim-by-claim basis. *Mardesich v. Cate*, 668 F.3d 1164, 1171 (9th Cir. 2012) ("AEDPA's one-year statute of limitations in § 2244(d)(1) applies to each claim in a habeas application on an individual basis.").

In determining the expiration date of the limitations period, the Court analyzes whether tolling applies.  Under AEDPA's statutory tolling provision, the limitations period is tolled during the "time during which a properly filed application for State post-conviction relief or other collateral review with respect to the pertinent judgment or claim

---

[3] Where a defendant's convictions and sentences became final before AEDPA's April 24, 1996 effective date, the limitations period commenced on April 25, 1996 unless a later commencement date applies pursuant to one of the three other triggering dates set forth in 28 U.S.C. §§ 2244(d)(1)(B)-(D). *Patterson v. Stewart*, 251 F. 3d 1243, 1246 (9th Cir. 2001) (applying Fed. R. Civ. P. 6(a) and holding that the day of AEDPA's enactment, April 24, 1996, is excluded from the limitations period).

is pending." 28 U.S.C. § 2244(d)(2) (emphasis added); *Roy v. Lampert*, 465 F.3d 964, 968 (9th Cir. 2006) (limitations period is tolled while the state prisoner is exhausting his or her claims in state court and state post-conviction remedies are pending) (citation omitted).

AEDPA's statute of limitations is also subject to equitable tolling. *Holland v. Florida*, 560 U.S. 631, 645 (2010) ("Now, like all 11 Courts of Appeals that have considered the question, we hold that § 2244(d) is subject to equitable tolling in appropriate cases."). Yet equitable tolling is applicable only "if extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time." *Roy*, 465 F.3d at 969 (citations omitted); *Gibbs v. Legrand*, 767 F.3d 879, 888 n.8 (9th Cir. 2014). A petitioner must show (i) that he or she has been pursuing his rights diligently and (ii) some extraordinary circumstances stood in his or her way. *Pace v. DiGuglielmo,* 544 U.S. 408, 418 (2005); s*ee also Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1011 (9th Cir. 2009); *Roy*, 465 F.3d at 969.

### III. ANALYSIS

Petitioner raises five grounds for habeas relief in the Amended Petition. All five grounds relate to the sentencing enhancement Petitioner received based on the trial court's determination that Petitioner was on parole when he committed the May 1, 1984 offenses. For the reasons discussed below, all five grounds are barred by AEDPA's statute of limitations.

**A. The One-Year Statute of Limitations Commenced on April 25, 1996**

It is undisputed that Petitioner's convictions and sentences became final before AEDPA's April 24, 1996 effective date. Therefore, the limitations period commenced on April 25, 1996 unless one of the triggering events in 28 U.S.C. § 2244(d)(1)(B)-(D) provides a later commencement date. *Patterson*, 251 F. 3d at 1246. Petitioner appears to argue that the limitations period did not commence until he discovered the alleged sentencing errors. In the section of the Amended Petition regarding the timeliness of the petition, Petitioner wrote "The sentence errors were newly discover [sic], exhaustion of

the State Court Remedies became final in 2014." (Doc. 6 at 13). The undersigned liberally construes this statement as contending that the applicable triggering date for the limitations period is "the date on which the factual predicate of the claim presented could have been discovered through the exercise of due diligence" as set forth in 28 U.S.C. § 2244(d)(1)(D). Petitioner does not assert the precise limitations commencement date that the Court should use. However, Petitioner states that the Arizona Justice Project "recognized the sentencing errors." As the Arizona Justice Project filed the PCR Petition on November 16, 2011, the undersigned presumes that Petitioner is asserting that the Court should use a date near November 2011 as the limitations commencement date.[4]

The term "factual predicate" in 28 U.S.C. § 2244(d)(1)(D) refers to the facts underlying the claim, not the legal significance of those facts. *Hasan v. Galaza*, 254 F.3d 1150, 1154 n.3 (9th Cir. 2001) (petitioner need not "understand the legal significance" of the facts, rather than "simply the facts themselves," before the "due diligence (and hence the limitations) clock start[s] ticking"). As detailed below, because Petitioner knew or through due diligence could discover the facts underlying his habeas claims before April 25, 1996, he is not entitled to a delayed limitations accrual date under 28 U.S.C. § 2244(d)(1)(D).

**1. Grounds One and Two**

In Ground One, Petitioner states that he "was illegally sentenced due to the trial court ignoring the plain language of the parole statutes of the State of Arizona." (Doc. 6 at 6). Ground Two alleges that Petitioner's sentences violated the "Due Process Clauses of the Arizona and the United States Constitution, because no reasonable finder of fact could have found that he was on parole at the time of the offenses . . . ." (*Id*. at 8).

---

[4] To the extent Petitioner may be arguing that the Court should use April 22, 2014 (the date the PCR proceeding was exhausted in state court) as the triggering date, the argument fails. The date a federal habeas claim is exhausted in state court is immaterial in determining the precise date the limitations period is triggered under 28 U.S.C. § 2244(d)(1)(D). *See Redd v. McGrath*, 343 F.3d 1077, 1082 (9th Cir. 2003) ("[T]he date of the 'factual predicate' for Redd's claim under § 2244(d)(1)(D) is not dependent on when Redd complied with AEDPA's exhaustion requirement. Rather, it is determined independently of the exhaustion requirement by inquiring when Redd could have learned of the factual basis for his claim through the exercise of due diligence.").

The record shows that Petitioner was present during the January 14, 1987 sentencing hearing during which the facts underlying Petitioner's claims became apparent. *See United States v. Battles*, 362 F.3d 1195, 1198 (9th Cir. 2004) ("Surely due diligence requires that [defendant] at least consult his own memory of the . . . proceedings. His decision not to do so does not bespeak due diligence."). At the hearing, a supervisor in the time computation unit at the Arizona Department of Corrections testified that Petitioner (i) earned release credits for certain portions of the time that Petitioner was incarcerated and (ii) was released on parole on September 6, 1983. (Doc. 14-1 at 19). Based on the amount of release credits earned while incarcerated, Petitioner had eight months and eighteen days remaining on his sentences at the time of his release on parole.[5] Petitioner does not challenge these facts. Nor does Petitioner offer newly discovered facts. Instead, Petitioner argues that under the relevant version of ARIZ. REV. STAT. § 41-1604.07(A) and *Mileham v. Ariz. Bd of Pardons and Paroles*, 520 P.2d 840 (1974),[6] he was entitled to one day of earned release credit for every two days he was on

---

[5] The supervisor testified that Petitioner's parole was to expire on May 24, 1984. (Doc. 14-1 at 48). As Petitioner correctly notes (Doc. 20 at 5), eight months and eighteen days is the length of time between September 6, 1983 and May 24, 1984.

[6] Petitioner was sentenced for the prior offenses in 1982. (Doc. 14-1 at 23). The version of ARIZ. REV. STAT. § 41-1604.07(A) in effect at that time provided that "[e]ach prisoner classified as parole eligible, class one . . . shall be allowed" certain release credits. Petitioner relies on *Mileham* for the proposition that parole is "in legal effect imprisonment." (Doc. 20 at 7). Petitioner argues *Mileham* makes clear that while he was on parole, he was a "'prisoner' who was 'serving' his sentence and who therefore was entitled to earned release credits under the plain language of § 41-1604.07(A)." (*Id.*). The 1974 *Mileham* decision, however, predated the enactment of ARIZ. REV. STAT. § 41-1604.07. *See State v. Valenzuela*, 695 P.2d 732, 735 (Ariz. 1985) (explaining that a new Arizona criminal code went to effect in 1978 and that the "system of release credits was substantially changed under the new code").

In discussing the version of ARIZ. REV. STAT. § 41-1604.07 at issue in this case, the Arizona Supreme Court has stated that "[a] class one **inmate** earns release credits according to the nature of the crime for which he was convicted. . . . **Inmates** may remain in class one only if they are 'continually willing to volunteer for or successfully participate in a work, treatment or training program.' Ariz.Admin.Comp. R5–1–402(C)(1). **Inmates** who are not willing to volunteer or who do not successfully participate are reclassified and are ineligible for release credits. *Id.*" *Valenzuela*, 695 P.2d at 735 (emphasis added).

"[A] parolee is not on inmate status." *Cienfuegos v. Superior Court*, 837 P.2d 1196, 1999 (Ariz. Ct. App. 1992). Petitioner's claims in Ground One and Two may alternatively be dismissed on the basis that Petitioner has not shown that the state court's application of state law was so arbitrary or capricious as to constitute an independent due

- 6 -

parole. (Doc. 20 at 8). Under this theory, Petitioner's parole would have expired approximately two months before he committed the May 1984 offenses. Petitioner implicitly acknowledges that this is a legal, not a factual, argument where he states that the "manner in which the [ADOC supervisor] accounted for the time period during which Petitioner was on parole was legally, and significantly, incorrect." (*Id*. at 5-6). Indeed, Petitioner's argument merely applies a different interpretation of Arizona law to the same vital facts (i.e. date of release on parole, amount of release credits earned while incarcerated) used by the trial court in determining Petitioner's parole expiration date. Because Petitioner's argument does not rest on a newly discovered factual predicate, the November 2011 "discovery" of a new legal theory does not entitle Petitioner to a delayed commencement of the limitations period pursuant to 28 U.S.C. § 2244(d)(1)(D). *See Hasan*, 254 F.3d at 1154 n.3; *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000) (rejecting prisoner's assertion that the one-year period begins when he "*actually understands what legal theories are available*") (emphasis in original)); *Holmes v. Spencer*, 685 F.3d 51, 59 (1st Cir. 2012) ("We have interpreted § 2244(d)(1)(D)'s reference to the phrase 'factual predicate' to mean 'evidentiary facts or events[,] and not court rulings or legal consequences of the facts.'"). The undersigned finds that the limitations period commenced on April 25, 1996 as to Grounds One and Two.[7]

### 2. Ground Three

At the sentencing hearing, Petitioner's trial counsel argued that the Arizona Department of Corrections improperly denied Petitioner release credits for certain portions of time that Petitioner was incarcerated. Based on trial counsel's calculation,

---

process or Eighth Amendment violation. *See Ortiz v. Stewart*, 149 F.3d 923, 941 (9th Cir. 1998) ("A federal court is limited on habeas review to determining 'whether the state court's [application of state law] was so arbitrary or capricious as to constitute an independent due process or Eighth Amendment violation.'") (alteration in original) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).

[7] As Respondents note (Doc. 14 at 14), Grounds One and Two may be construed as presenting a claim of actual innocence. If so construed, the claims are subject to dismissal for the same reasons as the actual innocence claim presented in Ground Five, which is discussed in Section III(A)(4) below.

1  Petitioner's parole expired before he committed the May 1, 1984 offenses.  (Doc. 14-1 at
2  24-31, 38).  In Ground Three, Petitioner alleges that his trial counsel was constitutionally
3  ineffective for failing to argue at the sentencing hearing that Petitioner was entitled to
4  earn release credits while on parole.  (Doc. 6 at 9).  An ineffective assistance of counsel
5  claim requires a petitioner to show that his or her counsel's performance was (i)
6  objectively deficient and (ii) prejudiced the petitioner.  *Strickland v. Washington*, 466
7  U.S. 668, 687 (1984).  For habeas claims alleging the ineffective assistance of counsel,
8  the limitations period commences on the date that the "facts suggesting both
9  unreasonable performance *and* resulting prejudice" were discovered or with the exercise
10 of due diligence could have been discovered.  *Hasan*, 254 F.3d at 1154 (9th Cir.
11 2001) (emphasis in original).

12      Here, because Petitioner was present at the January 14, 1987 sentencing hearing,
13 the undersigned finds that January 14, 1987 is the date that the facts suggesting that the
14 allegedly unreasonable performance and resulting prejudice of Petitioner's trial counsel
15 were discovered or with the exercise of due diligence could have been discovered.  *See*
16 *Owens*, 235 F.3d at 359 (holding that 28 U.S.C. § 2244(d)(1)(D) did not provide a
17 delayed limitations accrual date for claim alleging the ineffective assistance of trial
18 counsel as the "principal fact setting the stage" for the claim was known at trial)
19 (emphasis omitted).  Accordingly, 28 U.S.C. § 2244(d)(1)(D) does not apply and April
20 25, 1996 is deemed the date the limitations period commenced as to Ground Three.

21          **3.  Ground Four**
22      In Ground Four, Petitioner argues that his appellate counsel was constitutionally
23 ineffective for failing to argue on appeal that the trial court erroneously determined that
24 Petitioner was on parole when he committed the offenses on May 1, 1984.  (Doc. 6 at
25 10).  Petitioner discovered or with the exercise of due diligence could have discovered his
26 appellate counsel's allegedly deficient performance in July 1987.  That is when
27 Petitioner's appellate counsel submitted his Opening Brief on direct appeal, which did
28

not challenge Petitioner's enhanced sentence.[8] *See Owens*, 235 F.3d at 359 (holding that 28 U.S.C. § 2244(d)(1)(D) did not provide a delayed limitations accrual date for claim that appellate counsel submitted a deficient appellate brief because the deficiency "was readily available to [the petitioner] before the appellate decision. All he had to do was read the brief filed on his behalf."). Petitioner discovered or with the exercise of due diligence could have discovered that he was prejudiced by his appellate counsel's performance when the Arizona Supreme Court affirmed his convictions and sentences in September 1988. The undersigned finds that the limitations period commenced as to Ground Four on April 25, 1996.

### 4. Ground Five

In Ground Five, Petitioner alleges that he is actually innocent of the "'offense' of committing a felony while on parole." (Doc. 6 at 11). It is unclear whether a federal habeas petitioner in a non-capital case may raise a freestanding claim of actual innocence. *See Jones v. Taylor*, 763 F.3d 1242, 1246 (9th Cir. 2014) ("We have not resolved whether a freestanding actual innocence claim is cognizable in a federal habeas corpus proceedings in the non-capital context . . . ."). It is also unclear whether a freestanding innocence claim, if cognizable, may challenge non-capital sentencing errors rather the underlying convictions.[9]

Assuming *arguendo* that Petitioner's substantive actual innocence claim is cognizable, the undersigned finds that the limitations period commenced on April 25, 1996 as to the claim for the reasons discussed in the preceding sections. Further, Section

---

[8] The Certificate of Service attached to the brief states that a copy of the Opening Brief was mailed to Petitioner on July 16, 1987. (Doc. 14-1 at 109). Petitioner does not allege that he did not receive a copy of the brief.

[9] In *Sawyer v. Whitley*, 505 U.S. 333 (1992), the Supreme Court extended the actual innocence exception to procedurally defaulted claims challenging capital sentences. It has not yet been decided by the Supreme Court or the Ninth Circuit whether the actual innocence exception extends to procedurally defaulted or time-barred habeas claims challenging noncapital sentencing errors. *See Dretke v. Haley,* 541 U.S. 386, 393 (2004) (declining to decide whether to "extend the actual innocence exception to procedural default of constitutional claims challenging noncapital sentencing error").

III(C) below explains that to the extent Ground Five argues that the untimeliness of this proceeding should be excused pursuant to the *Schlup*/actual innocence gateway, the claim fails. Petitioner's freestanding innocence claim therefore fails as well. *See House v. Bell*, 547 U.S. 518, 555 (2006) (a freestanding innocence claim requires even "more convincing proof of innocence than *Schlup*.").

### B. The Statute of Limitations Expired on April 24, 1997

The undersigned finds that in this case, the limitations period commenced on April 25, 1996 as to all of Petitioner's habeas claims. Consequently, unless statutory or equitable tolling applies, Petitioner's one-year deadline to file a habeas petition expired on April 24, 1997.

#### 1. Statutory Tolling Does Not Apply

In November 2011, Petitioner filed his PCR Notice and Petition. (Doc. 14-1 at 116-46). The statute of limitations, however, had expired on April 24, 1997. Once the statute of limitations has run, subsequent collateral review petitions do not "restart" the clock. *Jiminez v. Rice*, 276 F.3d 478, 482 (9th Cir. 2001); *Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003).

#### 2. Equitable Tolling Does Not Apply

It is a petitioner's burden to establish that equitable tolling is warranted. *Pace*, 544 U.S. at 418; *Rasberry v. Garcia*, 448 F.3d 1150, 1153 (9th Cir. 2006) ("Our precedent permits equitable tolling of the one-year statute of limitations on habeas petitions, but the petitioner bears the burden of showing that equitable tolling is appropriate."). As mentioned, a petitioner seeking equitable tolling must establish that: (i) he or she has been pursuing his or her rights diligently and (ii) that some extraordinary circumstances stood in his or her way. A petitioner must also show that the "extraordinary circumstances" were the "but-for and proximate cause of his [or her] untimeliness." *Allen v. Lewis*, 255 F.3d 798, 800 (9th Cir. 2001) (per curiam); *see also Ramirez v. Yates*, 571 F.3d 993, 997 (9th Cir. 2009). A petitioner's *pro se* status, on its own, is not enough to warrant equitable tolling. *See, e.g., Johnson v. United States*, 544

U.S. 295, 311 (2005) ("[W]e have never accepted *pro se* representation alone or procedural ignorance as an excuse for prolonged inattention when a statute's clear policy calls for promptness."). Petitioner does not allege that he is entitled to equitable tolling. Nor does the Amended Petition set forth grounds that would justify equitable tolling. As Petitioner has not met his burden of showing that extraordinary circumstances made it impossible for him to file a timely federal petition, equitable tolling is therefore unavailable.

### C. Actual Innocence

In *McQuiggin v. Perkins,* 133 S.Ct. 1924, 1931-34 (2013), the Supreme Court announced an equitable exception to AEDPA's statute of limitations. The Court held that the "actual innocence gateway" to federal habeas review that was applied to procedural bars in *Schlup v. Delo,* 513 U.S. 298, 327 (1995) and *House v. Bell*, 547 U.S. 518 (2006) extends to petitions that are time-barred under AEDPA. The "actual innocence gateway" is also referred to as the "*Schlup* gateway" or the "miscarriage of justice exception."

It is well-settled that "actual innocence means factual innocence, and not mere legal insufficiency." *See Marrero v. Ives*, 682 F.3d 1190 (9th Cir. 2012) (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)); *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) ("[T]he miscarriage of justice exception is concerned with actual as compared to legal innocence.").[10] "To be credible, such a claim

---

[10] Because it does not affect the outcome, the undersigned has assumed *arguendo* that the actual innocence exception applies to time-barred claims challenging noncapital sentences. As mentioned previously, neither the Supreme Court nor the Ninth Circuit have decided whether the actual innocence exception extends to procedurally defaulted or time-barred habeas claims.

Circuits that have addressed the issue are split. *See, e.g., Smith v. Collins,* 977 F.2d 951, 958–59 (5th Cir.1992) (assuming without deciding actual innocence exception extends to noncapital sentencing procedures); *United States v. Pettiford*, 612 F.3d 270, 284 (4th Cir. 2010) (holding that the actual innocence of sentence exception "applies in the context of habitual offender provisions only where the challenge to eligibility stems from factual innocence of the predicate crimes, and not from the legal classification of the predicate crimes") (emphasis added); *Spence v. Superintendent, Great Meadow Correctional Facility*, 219 F.3d 162, 171 (2d Cir. 2000) ("Because the harshness of the sentence does not affect the habeas analysis and the ultimate issue, the justice of the incarceration, is the same, there is no reason why the actual innocence exception should not apply to noncapital sentencing procedures."); *Embrey v. Hershberger*, 131 F.3d 739, 740 (8th Cir. 1997) ("[W]e think that Sawyer, in terms, applies only to the sentencing phase of death cases"); *Hope v. U.S.*, 108 F.3d 119, 120 (7th Cir. 1997) ("we do not think

1  requires petitioner to support his allegations of constitutional error with new reliable
2  evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts,
3  or critical physical evidence." *Schlup*, 513 U.S. at 324; *see also Lee v. Lampert*, 653 F.3d
4  929, 945 (9th Cir.2011); *McQuiggin*, 133 S.Ct. at 1927 (explaining the significance of an
5  "[u]nexplained delay in presenting new evidence").  A petitioner "'must show that it is
6  more likely than not that no reasonable juror would have convicted him in the light of the
7  new evidence.'" *McQuiggin*, 133 S.Ct. at 1935 (quoting *Schlup v. Delo,* 513 U.S. 298,
8  327 (1995)).  Because of "the rarity of such evidence, in virtually every case, the
9  allegation of actual innocence has been summarily rejected." *Shumway v. Payne,* 223
10 F.3d 982, 990 (9th Cir. 2000) (citing *Calderon v. Thomas,* 523 U.S. 538, 559 (1998)).

11        As discussed, Petitioner argues in Ground Five that the trial court erroneously
12 found that he was on parole when he committed the offenses on May 1, 1984.  (Doc. 6 at
13 11).  The undersigned liberally construes Ground Five as presenting a *Schlup* gateway
14 claim.

15        Petitioner's *Schlup* gateway claim is premised on his interpretation of ARIZ. REV.
16 STAT. § 41-1604.07 that he "only had to actually serve two thirds" of his sentence that
17 remained at the time he was released on parole.  (Doc. 20 at 8) (emphasis omitted).  This
18 interpretation would result in a finding that Petitioner's parole expired before he
19 committed the May 1, 1984 crimes, rendering him ineligible for the enhanced sentences
20 he received.  (*Id*.).  Petitioner's innocence claim does not involve new reliable evidence,
21 but is based solely on a novel legal theory.  The undersigned therefore finds that
22 Petitioner has not presented a claim of factual innocence, but one of legal insufficiency.
23 *See Marrero*, 682 F.3d at 1194 (petitioner raised actual innocence claim in 28 U.S.C. §
24 2241 petition asserting that he was incorrectly sentenced as a career offender because two

---

26 the [actual innocence] exception survives the [AEDPA] amendment"); *Reid v. State of
27 Okl.*, 101 F.3d 628, 630 (10th Cir. 1996) ("A person cannot be actually innocent of a noncapital sentence.").

of his prior offenses should no longer be considered "related"; Ninth Circuit rejected the claim because it was "clear" that petitioner's argument was "a purely legal claim that has nothing to do with factual innocence"); *see also Poindexter v. Nash,* 333 F.3d 372, 381-82 (2d Cir. 2003) (rejecting a claim of actual innocence based on the argument that defendant's three convictions should have been treated as a single conviction because he was sentenced for all three convictions on the same date because such an argument is legal, not factual).

For the above reasons, the undersigned finds that the untimely Amended Petition cannot pass through the *Schlup* gateway.

## IV.  CONCLUSION

Based on the foregoing,

**IT IS RECOMMENDED** that the Amended Petition (Doc. 6) be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that a certificate of appealability and leave to proceed in forma pauperis on appeal be denied because dismissal of the Amended Petition is justified by a plain procedural bar.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6, 72. Thereafter, the parties have fourteen days within which to file a response to the objections. Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).  Failure to file timely objections to any factual determinations of the Magistrate Judge may be considered a waiver of a party's right to appellate review of

the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Fed. R. Civ. P. 72.

Dated this 29th day of September, 2016.

*Eileen S. Willett*
United States Magistrate Judge